**Linda K. Fisher SHORTT, Appellee,**

v.

**The COUNTY OF ARLINGTON, VIRGINIA, Appellant.**

**No. 77–2511.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 15, 1978.

Decided Dec. 29, 1978.

Lawrence D. Tarr, Asst. County Atty., Arlington, Va. (Jerry K. Emrich, County Atty., Arlington, Va., Charles G. Flinn, Deputy County Atty., Arlington, Va., on brief), for appellant.

John J. Geraghty, Arlington, Va., for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

This is a sex discrimination case and is concerned with the employment practices of the police department of the defendant/appellant Arlington County, Virginia. Though it had employed two women for specialized work in the 1950s, the police department had been effectively an all-male police department for many years. In 1971 it determined to broaden its recruitment to include female officers. In embarking upon such new employment practice, it decided not to assign initially women trainees to at least a year's probationary patrol duty, as was its custom with respect to new trainees in general, but to assign them to other duties for their probationary period. This determination was based on the feeling of the department that "because of their physical stature and attributes" women were "unsuitable for patrol work." The district court found that this policy of relieving the female employees from any probationary assignment to patrol duty provoked no criticism from the male officers at the time.[1]

Under this new recruitment program adopted by the department, the plaintiff/appellee, a woman, was hired in December, 1971. After completing the police academy, she was assigned to the Criminal Investigations Division as a youth investigator. Investigators were normally classified as a class II police officer and entitled to pay at this higher level. But the appellee, though performing the duties of a class II investigator-officer, was paid during her probationary year at the normal rate of a class I police officer. In November, 1972, the department agreed with its employees' bargaining agent that once an employee had "successfully completed his probationary period as a Police Officer I, his subsequent assignment to a higher level position in the Police Schedule must be fully com-

---

1. The appellant challenges this finding but, since it is not clearly erroneous, it must be accepted as correct on appeal.

pensated at the appropriate rate for the higher level position." As a follow-up to this agreement, the County Director of Personnel issued his "criteria" for promotion of officers to higher level positions. In this statement, he directed that the "only criteria" to be used were:

"1. Successful completion of a probationary period as a Police Officer I.

"2. Actual assignment to a position which has been allocated to Police Officer II.

"3. Approval by the County Manager."

By December, 1972, the appellee had completed her probationary year and she was performing the duties of an investigator in the detective division, which qualified as a class II position. Consistent with the rules for promotion issued at that time, she was in December, 1972, promoted to the status and salary designation of a class II police officer and assigned to the duties of an investigator in the detective unit of the department.

It was at this point that the district court found that male officers began to complain that whereas male officers were required to perform at least a year of patrol duty before they could be considered for promotion to class II police officers, the women officers who had been employed under the new recruitment program, were being given class II status without serving a year's patrol duty. These complaints which had been under discussion between the bargaining agent of the employees and the department for some time, apparently came to a head in December, 1973, and resulted in an agreement between the bargaining agent[2] and the department "that all personnel (*females in particular*) must serve at least one year as a patrol officer before consideration for promotion to the Investigations Division." (Emphasis added) Pursuant to this agreement, "a program of transfers removing the females from their detective position (P II) to patrol positions (P I) on a staggered basis" was immediately com-

menced. The appellee was demoted in June, 1974, under this program from a class II police officer to a class I officer and assigned to patrol duty. She objected to the demotion and transfer. When she received no relief by administrative appeal, she filed within due time a sex-discrimination complaint with the Equal Employment Opportunity Commission (EEOC). Unable to resolve the complaint, the EEOC issued a suit letter and this action was begun by her in the district court against the County of Arlington, Virginia. After trial, the district court found that the plaintiff's transfer and demotion were the result of sex-discrimination and ordered appropriate relief. From the judgment entered on the basis of such findings, the defendant has appealed. We affirm.

■ The record clearly supports the district court's findings that the demotion and transfer of the plaintiff from a class II officer assigned to the detective division of the police department to a class I officer assigned to patrol duty constituted "discrimination on account of sex—which, * * * is a violation of Title 7 of the Civil Rights Act of 1964." It is obvious from the very wording of the defendant's department head that the adoption of the retroactive patrol duty requirement for promotion was merely a pretext, as the district court found, for demoting the plaintiff and the other female officers in her group. This memorandum of demotion to patrol duty is directed at "females in particular." It was not a requirement based upon any conclusion that patrol duty was an experience necessary for promotion. The most the defendant claimed in this regard was that it was a valuable experience. Neither did the defendant question the satisfactory performance by the plaintiff of her duties as a class II officer in the detective division. The finding of the district court that this one-year patrol requirement, retroactively applied against the plaintiff, was devised

2. The bargaining agent was dominated by the male officers in the department. Of the approximately 250 officers in the department, little more than a score were female. It is thus

clear why the bargaining agent took up the cudgels in favor of male officers against female officers.

manifestly as a thinly disguised method for demoting the plaintiff, irrespective of her qualifications and competency, was clearly not erroneous.

Actually, the defendant in effect concedes the discriminatory purpose behind the action taken against the plaintiff. It, however, would defend on the ground that it was merely attempting to correct what it describes as an earlier preference given the plaintiff and other women officers. It reasons that when it omitted requiring the women officers hired to serve at least one year's patrol duty before qualifying for promotion as was the requirement for all male officers hired, the women officers were given an improper preference over the male officers. It was, the department argues, to right this unjust preference that the department took the action it did. We find no merit in the argument.

The women officers neither asked for nor were consulted about their assignments when hired. It was not at their instance that they were relieved of patrol duty in their probationary year. Nor was there any complaint by the male officers about the assignment of the female officers to other duties than patrol when the latter were employed, according to the district court's finding. But when the female officers qualified for and received promotions under the department's November, 1972, procedures, the complaints began and the action taken by the department in demoting and assigning the female officers to patrol duty was in answer to these complaints. What the department did was to "bump" the female officers from their class II status by demoting them from class II officers and assigning them to patrol duty with consequent status as class I officers; and this was done plainly in order to open up the vacated class II position for promotion

of male officers (they being the only officers who could qualify with at least one year's patrol duty).[3]

■ Title VII neither requires nor authorizes "bumping" of incumbent employees from jobs to which they have been promoted, even though it may be asserted that their promotion itself was discriminatory. So much we made clear in *Patterson v. American Tobacco Co.* (4th Cir. 1976) 535 F.2d 257 at 267, *cert. denied* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286, *modified* 586 F.2d 300 (4th Cir. 1978): " * * * Title VII has not been construed to impose a duty to demote incumbents." Nor does this rule permit a "distinction between pre-Act and post-Act incumbents" in determining whether there is authority for demoting incumbents under Title VII. In either event, "[d]emoting employees, especially those who are not responsible for wrongdoing" would be "an unsettling process" on employee relations, the "domino effect [of which would] adversely affect[s] employees who have done no wrong and who, indeed, may have been the victims of discrimination."[4] Congress never intended that Title VII should be given a construction such as to create that disturbing effect on employee relations nor has any court given it that construction.

■ And this rule against demotion of incumbents under the guise of removing the effects of past discrimination is particularly applicable in a case such as this where the "bumping" or demotion is simply a disguised act of sex discrimination. The mere fact that the plaintiff's earlier promotion may have resulted in her preferential treatment, without any knowledge or participation by her, cannot immunize the department's later demotion of her in what the

3. At one point, the district judge stated he was not ordering "any bumping, and I don't think we get into that in this case." It is obvious, however, that this was the situation. Prior to the transfer and demotion, the plaintiff was occupying a slot as a class II officer to which she had been promoted under the department's "criteria." When she was reduced to class I status and transferred to patrol duty, she was

"bumped" from her former slot and that slot was accordingly available for promotion of a male officer. The district judge accordingly was in error in thinking that "bumping" was not a factor—in fact, the significant factor—in this case.

4. *See* 535 F.2d at 268–269.

district court found, with ample support in the record, was an obvious act of sex discrimination in violation of Title VII. The district court's order granting plaintiff relief will accordingly be

*AFFIRMED.*