**Sue L. KENNEDY, Appellee**

v.

**R. M. LANDON, J. D. Cox, A. T. Robinson, and W. B. Digges, Appellants.**

**No. 77–2589.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 15, 1978.
Decided May 24, 1979.

George Wm. Warren, IV, Richmond, Va. (Sylvia Clute, Francis, Hubard, Tice & Warren, Richmond, Va., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

WIDENER, Circuit Judge:

Sue L. Kennedy, a female employee of the Commonwealth of Virginia, Department of Corrections, as Assistant Superintendent for Treatment at the Virginia State Penitentiary, sued under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5, alleging that she had been discriminated against on the basis of her sex when she was not appointed Assistant Superintendent B in Charge of Security at the State Penitentiary. The district court ruled that Mrs. Kennedy had indeed been discriminated against because of her sex in a part of the selection process in selecting an Assistant Superintendent B in Charge of Security. The court, however, concluded that the applicant selected was the best qualified one for the position and, therefore, did not order Mrs. Kennedy's appointment to the position of Assistant Superintendent B in Charge of Security.[1] The court also determined that she was not entitled to any monetary damages, i. e., backpay, because she had suffered no loss of wages as a result of the discrimination.[2] She does not appeal these holdings. The district court limited relief to the entry of an injunction and an order directing the parties to the suit to meet and confer in an effort to reach an amicable agreement with regard to Mrs. Kennedy's entitlement to attorneys' fees.[3] We affirm the district court in part, but require the vacation and modification of a part of its injunction.[4]

Walter H. Ryland, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Virginia, John Hardin Young, Henry M. Massie, Jr., Asst. Attys. Gen., Richmond, Va., on brief), for appellants.

1. The district court stated, "Title VII does not contemplate 'bumping' an innocent beneficiary of unlawful discrimination in favor [of] a less qualified victim of discrimination." In this regard, the court accurately forecast our recent determination that "Title VII neither requires nor authorizes 'bumping' of incumbent employees from jobs to which they have been promoted, even though it may be asserted that their promotion itself was discriminatory." See *Shortt v. County of Arlington*, 589 F.2d 779, 782 (4th Cir. 1978).

2. The court determined that the position Mrs. Kennedy sought, from a monetary standpoint, would have been a lateral transfer.

3. The court also ordered that Mrs. Kennedy recover her costs in the suit.

4. In addition to asserting that the district court erred in finding that they had discriminated against Mrs. Kennedy on the basis of her sex, defendants have raised a number of other is-

On October 4, 1976, the position of Assistant Superintendent B in Charge of Security at the State Penitentiary became vacant. Pursuant to the procedures of the Department of Corrections, notices were sent out advertising for candidates to fill the vacant position. The application deadline was advertised as November 8, 1976. Mrs. Kennedy and three males submitted timely applications to the Personnel Department for the Department of Corrections.

Soon after the application period had closed, the Personnel Supervisor of the Department of Corrections (who is not involved in this case) informed W. B. Digges, employed by the Department of Corrections, Division of Adult Services as Associate Director for Major Institutions and the person in charge of overseeing the selection process for the position, of the names and basic qualifications of each applicant. Digges testified that he was dissatisfied with both the quantity and the quality of the applicants.[5] Pursuant to Departmental guidelines, at least three and preferably five applicants must be interviewed for each vacancy.

Some time during the week of November 8th, Digges instructed the Personnel Supervisor to readvertise for candidates to fill the vacant position. On November 17, L. K. Hardy, the applicant ultimately selected for the position, submitted his application for the position directly to Digges.[6] On November 24, the position was readvertised, and the deadline for applications was extended to December 1. No additional applications were received.

During the week subsequent to the close of the initial application period, Digges informed R. M. Landon, Director of the Adult Services Division and the person who had final responsibility for hiring, that he was readvertising for candidates to fill the vacant position. Digges spoke with Landon about the possibility of encouraging other candidates to apply and also inquired whether Landon knew of any persons who might be qualified for the position. Landon and Digges discussed the possibility of encouraging Hardy to apply for the position. Landon contacted Hardy to encourage him to apply for the position, and said to Hardy, "I wish you would apply. I think you have a lot of potential, a lot of folks think you do." [7] The court determined that Landon and Digges solicited Hardy's application in good faith, believing him to be better qualified than each of the original applicants.

On December 6, 1976, Digges appointed an Employment Selection Board to interview the prospective candidates for the position and to recommend to him the top two candidates for final consideration. Digges appointed R. F. Guillen, Jr., A. T. Robinson, and J. D. Cox to the Board.[8]

The Employment Selection Board conducted its interviews with the five candidates for the position on December 9, 1976. Each member of the Board completed an Applicant Appraisal Record for each of the candidates for the position. Each candidate was rated on the basis of five factors: background, mental qualities, physical characteristics, capacity and composite personality. A numerical rating was given on each factor: poor (2–5), fair (6), good (7), very good (8), and excellent (9–10). The ratings on each factor were added together for a total score. Based upon this rating formula, Hardy received the highest rating of the five candidates (127) and Kennedy received the second highest (123). Consequently, the

---

sues on appeal. We have reviewed those issues and determined they are without merit.

5. Digges also testified that Mrs. Kennedy was qualified for the position.

6. Digges testified that he forwarded Hardy's application to the Personnel Department.

7. Landon testified that he discussed encouraging a number of other persons to apply for the

position as well, but for various reasons the others were not available for the position.

8. Robinson testified that, prior to his appointment to the Board, he encouraged Hardy to apply for the position. He also testified that he encouraged others to apply for the position, including a Mr. Stacey.

Board recommended Hardy and Kennedy to Digges for his consideration.[9]

Upon receipt of the Board's recommendations, Digges reviewed the Applicant Appraisal Records and the applications and personnel records of each candidate. Digges testified that he made a management decision to recommend to Landon the appointment of Hardy to the position as the best qualified candidate. Digges forwarded his recommendation to Landon. Landon reviewed the Applicant Appraisal Records of each candidate, discussed with Digges the reasons for his recommendation of Hardy, and concurred that Hardy was the best qualified candidate for the position. Hardy was appointed to the position on December 10, 1976.

The district court rejected Mrs. Kennedy's contention that the defendants in the action below purposely conspired to deprive her of the position and manipulated the selection process so as to obscure their discriminatory action, but, nevertheless, concluded that the evidence established that Kennedy's gender was a factor adversely affecting the Department of Corrections' consideration of her application. The court determined that, taken together, all the facts and circumstances compelled it to the conclusion that Kennedy was discriminated against on the basis of her sex, and pointed to "four crucial" aspects of the employee selection process in which sex discrimination surfaced. We think in all respects save one the facts simply do not support the district court's finding of sex discrimination.

█ The court determined that Digges and Landon "pre-selected" Hardy to fill the vacant position, and that this evidenced unlawful sex discrimination in the employee selection process. Although the pre-selection of Hardy may have violated the rules and regulations of the Department of Corrections, it does not evidence the type of discrimination that is prohibited by Title VII. All parties to this litigation concede that Hardy was the best qualified candidate for the position.[10] In addition to finding that Landon and Digges solicited Hardy's application in good faith, believing him to be better qualified than any of the original applicants for the position, the district court stated it "fully accept[ed] defendants' conclusion that Mr. Hardy was better qualified than plaintiff to fill the . . . position," and went to some length to explain why the defendants were justified in concluding that Hardy was more qualified for the position than Kennedy. Because the conclusion that Hardy was the most·qualified candidate for the position seems unassailable, we find the district court's conclusion that Hardy's pre-selection constituted sex discrimination to be incorrect.

█ The court also concluded that Digges' decision to reopen the application period and solicit Hardy's application was based, in part, on consideration of Mrs. Kennedy's gender and, thus, constituted unlawful sex discrimination under Title VII. Department of Corrections guidelines require that at least three and preferably five applicants be interviewed for each vacancy. During the initial application period, four persons, including Mrs. Kennedy, applied for the vacant position. Therefore, Digges could have convened the Employment Selection Board to interview those four applicants and recommend to him the two most qualified candidates for the' position from those applicants. In light of the fact Digges testified that he considered Kennedy qualified for the position, we do not think the district court's determination that Digges' decision to reopen the application period rather than convene the Employment Selection Board was based, in part, on Kennedy's gender, and thus violated Title VII, was clearly erroneous.[11]

---

9. In recommending Hardy and Kennedy to Digges, the Board stated no preference for either candidate.

10. Mrs. Kennedy has not appealed the district court's finding to that effect.

11. From the evidence, the district court also would have been justified in determining that Digges' decision to reopen the application period was not based on Mrs. Kennedy's gender. For example, Digges testified that he recommended Kennedy for the position she currently

■ In conjunction with its finding that Digges' decision to reopen the application period was based, in part, on Mrs. Kennedy's gender, the district court stated, "[t]his Court concludes that, had plaintiff been male, *defendants* would have given greater consideration to her application at the time of *their* decision to readvertise the position and solicit Hardy's application." This conclusion is inconsistent with the evidence and the district court's own finding to the effect that it was Digges' decision alone to reopen the application period, and therefore cannot stand.[12]

■ The court further stated, "[t]his conclusion [that had Kennedy been male, defendants would have given greater consideration to her application at the time of their decision to readvertise the position] is bolstered by the general sexist attitude which the evidence discloses pervades the Department of Corrections. . . ." The court pointed to the "unrefuted" testimony of Sergeant M. Johnson, a female employed by Major L. Reynolds and Captain Dunn, also employed at the State Penitentiary, as evidencing a sexist attitude at least at the lower echelon of the corrections system. The court also pointed to the testimony of Sgt. Johnson that females employed at the State Penitentiary are given less responsibility than their male counterparts as evidencing the existence of sexist attitudes among higher management personnel as well. The court's characterization of Sgt. Johnson's testimony is not justified by the record. Major Reynolds not only did not recall making the statements attributed to him by Sgt. Johnson, he also refuted the specifics of Sgt. Johnson's testimony regarding her allegation that females employed at the State Penitentiary are given less responsibility than their male counterparts. But, be that as it may, and acknowledging the district court's authority in fact finding, there is no support in the record for the court's finding that a *general* sexist attitude *pervades* the Department of Corrections, and, thus, we conclude the court's finding in that regard is clearly erroneous. The slight evidence does not permit the broad conclusion.

■ The district court also found that the Employment Selection Board's rating of Mrs. Kennedy was impermissibly influenced by its consideration of her gender. The court stated, "[t]he discrimination evidenced in the rankings is apparent." We think the court clearly erred in finding that the Board's rating and ranking of Mrs. Kennedy was impermissibly influenced by its consideration of her gender. Indeed, our review of the record does not disclose any evidence of discrimination in the rating or ranking of the respective applicants.

Aside from the court pointing to the fact that it did not believe the Board members' testimony that they did not discuss Kennedy's gender when considering her application,[13] the only act of discrimination in the

occupies, i. e., Assistant Superintendent for Treatment at the State Penitentiary, and that he reopened the application period because he wanted ten or twelve applicants to choose from in filling a position as important as Assistant Superintendent B in Charge of Security.

12. The court also stated that one aspect of Landon's testimony satisfied it as to the correctness of its conclusion that had Kennedy been male, the *defendants* would have given greater consideration to her application at the time of *their* decision to readvertise the position and solicit Hardy's application. As previously stated, the evidence adduced at trial shows, and the district court so found, that Digges alone made the decision to reopen the application period and readvertise for the position. Because Landon did not make or take part in the decision to readvertise for the posi-

tion, the testimony pointed to by the district court does not lend support to its inconsistent conclusion. (Emphasis is added in the quotation in this footnote.)

13. The court pointed to its disbelief of the Board members' testimony that they did not discuss Mrs. Kennedy's gender when considering her application as support for its determination that the Board's rating of Kennedy was impermissibly influenced by its consideration of her gender. Mrs. Kennedy testified that Robinson asked her how she would be able to get along with the male officers in the institution. She also testified that Guillen asked her a question regarding her sex and the job requirements. Both Robinson and Guillen denied asking the questions attributed to them by Kennedy. The court stated that, "it doubts . . .

rating of Mrs. Kennedy pointed to by the district court was the fact that Cox rated Kennedy "inferior to all four males in the categories of 'physical characteristics' and 'capacity' [with] no legitimate nondiscriminatory reason for these ratings [being] demonstrated." [14] But significantly, the district court does not point to any reason which would have required Cox to rate Mrs. Kennedy higher.

On the Applicant Appraisal Records, accompanying the factor "physical Characteristics," is the following: Consider general bearing, attire, grooming, poise, voice, speech and overall manner. Accompanying the factor "capacity," is the following: Is candidate well equipped to perform the work proposed, to learn and to show potential growth? Do strength of character, capabilities and initiative impel the candidate toward advancement?

■ Cox gave Hardy a rating of 8.5 (very good) on both physical characteristics and capacity. He gave Mrs. Kennedy a rating of 7.5 (good) on both physical characteristics and capacity. Cox gave the following ratings to the other applicants: Garraghty, physical characteristics—8.5 (very good), capacity—8 (very good); Wootton, physical characteristics—8.5 (very good), capacity—8.5 (very good); O'Donnell, physical characteristics—8.5 (very good), capacity—8.5 (very good). The difference between Cox's rating of the respective applicants on the factors of physical characteristics and capacity ranges from .5 to 1. We think the district court's determination that this difference in ratings, a very small one indeed, was attributable to Cox's discrimination against Mrs. Kennedy because of her gender is implausible.

The district court noted that Guillen ranked Mrs. Kennedy first among the five candidates, and Robinson ranked her second. The court recited no reason why the two respective rankings were discriminatory. Nevertheless, as previously stated, it concluded that the Board's ranking of Mrs. Kennedy was tainted by discrimination. Guillen's and Robinson's rating and ranking of Mrs. Kennedy was more favorable than Cox's and very favorable in and of themselves. Thus, we think the district court's determination that those rankings were attributable to discrimination against Mrs. Kennedy because of her gender is clearly erroneous.

■ The district court also concluded that because both Digges' and Landon's decision to select Hardy for the position was based, in part, on the Board's relative ranking of Hardy and Kennedy, and the Board's ranking was tainted by sex discrimination, Digges' and Landon's selection of Hardy was also tainted by sex discrimination. Because we have determined that the Board's rating and ranking of Kennedy was not tainted by sex discrimination, it follows that the court's finding that Digges' and Landon's selection of Hardy for the position

the credibility of this aspect of their testimony. Indeed, the striking lack of recall casts doubt on their account of the Board's deliberative process." The court also stated that it found incredible and rejected Robinson's, Guillen's and Cox's contention that they never discussed or even considered the subject of Kennedy's sex in relation to her application.

Accepting, as we must, the court's characterization of the Board members' testimony, we do not think it lends support to the court's conclusion that Kennedy's ratings were influenced by the Board's consideration of her gender. By all accounts, Hardy was the most qualified candidate, and he was so rated. Indeed, of the two Board members accused of asking sex related questions, Guillen ranked Kennedy first among the five applicants and Robinson ranked her second. Although Cox ranked Kennedy fourth among the five applicants, he did not give her a rating below 7.5 (good) on any of the five factors. In light of these facts, we find the statements of the district court that its disbelief of the Board members' testimony lends credence to its finding that the Board's rating of Kennedy was impermissibly influenced by its consideration of her gender unconvincing.

14. The court also noted that Cox ranked Kennedy fourth overall out of the five applicants. As previously stated, note 13 *supra*, Cox did not give Kennedy a rating below 7.5 (good) on any of the five factors. His overall rating of Kennedy was 40. Cox gave the following overall ratings to the other applicants: Hardy—43; Garraghty—42; Wootton—39; O'Donnell—41. We do not think the small difference between Cox's rating of Kennedy and the four other applicants is evidence of unlawful sex discrimination.

was tainted by sex discrimination cannot stand. This result is reinforced by the fact that the district court itself determined that Hardy was the best qualified candidate for the position and, consequently, Digges and Landon were justified in selecting Hardy for the position.

Separately, since Mrs. Kennedy was rated second by the Board which forwarded her name, along with Hardy's, with no preference, Hardy being conceded first by everyone, including the district court, the idea that Mrs. Kennedy's second place was due to sexual discrimination is subject to valid objection on its face.

Because we have determined that the only act of discrimination in the instant case was Digges' decision to reopen the application period rather than convene the Employment Selection Board when he had four applicants, the injunctive relief ordered by the district court against Landon, Cox, and Robinson must be vacated.[15] Upon remand, the district court should modify its injunction to enjoin Digges from reopening an application period, rather than convening the Employment Selection Board, for sexually discriminatory purposes when he has received an appropriate number of applications, pursuant to Department of Corrections guidelines, for a position for which Mrs. Kennedy has applied.[16]

Accordingly, the district court's order is

*AFFIRMED IN PART AS MODIFIED, VACATED IN PART, and REMANDED.*

---

**15.** The court enjoined Landon, Digges, Cox, Robinson, their successors, agents and employees, from engaging in any employment practices that discriminate against Mrs. Kennedy on the basis of her sex.

**16.** In light of our disposition of this case, on remand, the district court should reconsider the amount of attorneys' fees due Mrs. Kennedy's attorneys' as measured by her degree of success on the merits of this case. Additionally, Mrs. Kennedy is entitled to attorneys' fees incurred on appeal in defending her injunction against Digges. Counsel for Mrs. Kennedy and

Digges should meet and confer in an effort to reach an amicable agreement regarding Mrs. Kennedy's attorneys' entitlement thereto. If the parties are unable to agree on an amount, they are directed to submit appropriate affidavits to the clerk of the court, following which this court will set the appropriate amount of attorneys' fees for the appeal.

Counsel for Mrs. Kennedy has requested additional attorneys' fees and double costs to be taxed against the defendants, contending that the appeal in this case was frivolous. This request is denied.