28 F.3d 1210
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jerome LOFTON, Plaintiff-Appellant,
v.
John O. MARSH, Jr., Secretary of the Army, Defendant-Appellee.
 No. 93-1592.
 United States Court of Appeals, Fourth Circuit.
 Argued April 12, 1994.
Decided July 1, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. M. J. Garbis, District Judge. (CA-88-2166-MJG)
 Jesse Dean Mosher, Springfield, Virginia, for Appellant.
 David Ira Salem, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 Madalyn E. Johns, Silver Spring, Maryland, for Appellant.
 Lynne A. Battaglia, United States Attorney, Baltimore, Maryland; Captain Christopher J. O'Brien, Department of the Army, Arlington, Virginia, for Appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, SPROUSE, Senior Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Jerome Lofton appeals from the judgment of the district court, entered after a three-day bench trial, in favor of the defendant, Secretary of the Army, on Lofton's Title VII[1] claim that he was denied a position as an Army civilian employee because of his race. Holding that the district court was not clearly erroneous in its finding of no racial discrimination in the hiring process, we affirm.
 
 
 2
 The position for which Lofton applied was a new position in the Management Employee Relations Office ("MERO") at Ft. Meade, Maryland, created for the purpose of advising supervisors in the Ft. Meade complex concerning employee compensation and benefits. Sandra Keppley was in charge of the personnel branch that supervised MERO. Lofton claimed that Keppley chose Kay Benner, a white female, for the advertised position, denying it to him because of his race.
 
 
 3
 Lofton is an African-American male who received a Bachelor of Arts degree from Alabama State University in 1972. While working full-time at Winn-Dixie, Inc., as a meat cutter and manager of the meat department, he graduated from Atlanta Law School in 1982. He did not take the bar examination but continued to work at Winn-Dixie until January 1984. Lofton moved to the Baltimore area in early 1984 to find employment with the federal government. He applied for but failed to obtain several civil service positions so he accepted a job as a meat cutter at the Ft. Meade Commissary. Lofton then applied for the position to be created in Keppley's department. Kay Benner, who was eventually awarded the position, was working as a temporary clerk for Keppley in the civilian personnel office when the hiring decision was made. Prior to that, she had been employed as an Army civilian in Korea.
 
 
 4
 As soon as Keppley was advised of the new position, she drafted a statement of the anticipated duties and worked with a staff specialist in the classification branch to determine the appropriate category for the position. The district court found that Keppley was engaged in this process when Benner began working for her at the civilian personnel office and soon decided that Benner should be appointed to the position. The court found that Benner was thus preselected and that the hiring process was improperly designed to effectuate that predetermination.
 
 
 5
 The MERO compensation and benefits position was first announced as a competitive one, open only to applicants with civil service status. Lofton applied pursuant to that announcement. He was graded as one of the two top applicants and his application was one of seventeen forwarded to Keppley for further consideration. Benner did not have civil service status and was ineligible to apply for a competitively advertised Army opening; therefore, a recruiting bulletin was issued for noncompetitive applications,[2] making Benner eligible to apply. She did so and, together with four others applying noncompetitively and the seventeen eligible as competitive applicants, was interviewed by Keppley for the position. Although Keppley was so impressed with Lofton's interview that she attempted to find him another job at a higher grade, she selected Benner for the position at issue.
 
 
 6
 The district court, after three days of argument and testimony, applied the McDonnell Douglas calculus[3] and determined that Lofton had established a prima facie case; that the defendant had asserted nondiscriminatory reasons for the selection of Benner; and that Lofton had proved that the defendants' articulated reasons were pretextual. The court found, however, that the pretext was not related to race but was designed to disguise the improper preselection of Benner.
 
 
 7
 The district court correctly observed that a plaintiff in a Title VII case must do more than disprove the defendant's articulated reasons. He or she must instead establish that the articulated reasons were a pretext for prohibited discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). See also Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir.1989) ("[A] finding that the reasons proffered by defendants were, in some general sense, 'unworthy of credence' does not of itself entitle plaintiff to prevail. The reason for their lack of credence must be the underlying presence of proscribed discrimination.") (citation omitted); Kennedy v. Landon, 598 F.2d 337, 341 (4th Cir.1979) (although preselection may have violated department rules, it does not evidence the type of discrimination that is prohibited by Title VII). Any doubt about this doctrine is foreclosed by the Supreme Court's decision in St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742 (1993), where the Court instructed that "a reason cannot be proved to be 'a pretext for discrimination ' unless it is shown both that the reason was false, and that discrimination was the real reason." 113 S.Ct. at 2752.
 
 
 8
 The district court discredited much of the Army's evidence and found that its position that Benner was selected in a fair competitive process was not supported by the evidence. It also found, however, that Benner had outstanding educational credentials, job-related experience, and had demonstrated her abilities. The court further observed that it could not "say that Lofton would have been selected over Benner had it been a fair competitive process. The choice may very well have been the same." The district court went on to find that although Lofton disproved the Army's articulated reasons, he did not show that they were a pretext for prohibited discrimination." Rather it was based upon the fact that he was not Benner, the preselected choice."
 
 
 9
 These district court findings concerning the existence and character of the employer's pretext, of course, will not be disturbed unless clearly erroneous. Holder, 867 F.2d at 828; Kennedy, 598 F.2d at 341. Here, the fact findings were not clearly erroneous. It is not disputed that Lofton is an African-American and was denied the job although qualified for it, that the position remained open, and that it was later filled by Brenner. That is sufficient to create a prima facie case. Beyond that, however, there is no evidence that consideration of race played a part in the selection process. Although there is some evidence to the contrary, the great weight of the evidence supported the district court's finding that Keppley manipulated the hiring regulations and thus abused her position in order to give permanent employment to her temporary assistant. The district court found, and we are similarly persuaded, that all of the posting and interviewing for the position was but a smoke screen to camouflage that purpose. Unfortunately for Lofton, that does not support a finding of discrimination based on race and is not enough to establish a Title VII claim. Holder, 867 F.2d at 828; Kennedy, 598 F.2d at 341.
 
 
 10
 Lofton may well have other intra-Army administrative avenues for rectifying the unfair treatment he received. Counsel for the Army assured us that such is the case. Under the facts as found by the district court, however, he does not have a Title VII case, and we are persuaded that the findings of fact are not clearly erroneous.
 
 AFFIRMED
 
 
 [1]
 42 U.S.C. Sec. 2000e
 
 
 [2]
 Lofton raises some questions concerning the propriety of expanding the recruiting effort to include those not maintaining civil service status, but because that relates to the irregularity of the job process--a fact found by the district court--it is not necessary to consider the details of the Army civilian personnel regulations involved
 
 
 [3]
 McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802 (1973)