72 F.3d 128
 67 Empl. Prac. Dec. P 43,792
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Alaska R. STANLEY, Plaintiff-Appellant,
v.
Sheila WIDNALL, in her official capacity as Secretary of the
Department of the Air Force, Defendant-Appellee.
 No. 95-1206.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1995.
Decided Dec. 11, 1995.
 
 ARGUED: Richard Woodson Rutherford, ANDERSON, RUTHERFORD, GEIL & SCHERER, L.L.P., Raleigh, North Carolina, for Appellant. Eileen Coffey Moore, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 ON BRIEF: Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.
 Before RUSSELL, WILKINS, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Alaska R. Stanley brought this action under Title VII of the Civil Rights Act of 1964 against Appellee Sheila Widnall in her official capacity as the Secretary of the Department of the Air Force, alleging that the Air Force failed to promote Stanley because of his race. The district court granted summary judgment in favor of the Air Force, concluding that Stanley had failed either to make a prima facie case of racial discrimination or to show that the Air Force's asserted reason for not promoting him was a pretext for discrimination. We agree with the district court that summary judgment was proper because Stanley has not demonstrated that a genuine factual dispute exists regarding the Air Force's articulated, nondiscriminatory reason for failing to promote him. We therefore affirm.
 
 I.
 
 2
 When the events underlying this action took place in 1989, Stanley, a black civilian employee of the Air Force, had been an Engineering Technician at Seymour Johnson Air Force Base in Goldsboro, North Carolina for five years. In that capacity, Stanley inspected base housing and performed quality assurance checks on work performed by base-housing contractors. Edward Ellis was Stanley's supervisor. At the time, Stanley had approximately twelve years experience in drafting and surveying and had earned a degree in Engineering Drafting from the Maryland Drafting Institute. Stanley also had taken several engineering-related courses offered by the military.
 
 
 3
 A single, temporary position for a Construction Representative became available in 1989. Ellis, the hiring official, considered only off-base applicants for that position and selected Bobby Fields, a white male. Before Fields assumed the position, however, two permanent Construction Representative positions became available. When that happened, the base Civilian Personnel Office (CPO) automatically generated and sent to Ellis a list of eligible, qualified, on-base candidates for the positions. Stanley was listed among twelve candidates. The CPO simultaneously mailed a notice to Stanley indicating that he was "among the best qualified candidates" for the Construction Representative positions and that he was ranked second. However, Ellis received an alphabetical list of on-base candidates, rather than a ranking of them.
 
 
 4
 Ellis and his assistant compared the qualifications of Fields, Stanley, and the eleven other on-base candidates for the two Construction Representative vacancies. The job required experience in managing all aspects of major construction contracts. Ellis therefore reviewed each applicant's education, experience, professional ratings, and performance evaluations relating to construction oversight. He did not interview any of the candidates.
 
 
 5
 Based on those considerations, Ellis and his assistant agreed that Fields, the off-base candidate, and Claudette Adams, one of Stanley's coworkers, were the best qualified candidates. Ellis's immediate supervisor, Henry Labrecque, however, rejected Adams. After some discussion, Ellis and Labrecque then agreed to hire Fields and Joe Venezia--both white males--for the vacant positions. Ellis and Labrecque testified that they never considered Stanley as one of the top three candidates.
 
 
 6
 Ellis testified that he rejected Stanley for the position because Fields and Venezia were better qualified than Stanley. Fields previously had worked under Ellis as a Construction Representative for four years and had performed well. Fields also had six years experience as a project manager for a construction company, two years experience as a general contractor, five years of drafting experience, and five years of college. Venezia had an Associate's Degree in Science and a broad technical background, including experience in mechanical and heating systems and all other aspects of construction. Like Fields, Venezia previously had overseen construction projects for a private company.
 
 
 7
 Stanley does not dispute that Fields and Venezia possessed these qualifications. Rather, Stanley believes that he was as qualified as Venezia and Fields and that Ellis breached standard hiring procedures, thereby raising an inference of racial discrimination.
 
 
 8
 After meeting the administrative prerequisites to filing suit under Title VII, Stanley initiated this action in district court, alleging that Ellis rejected Stanley for a permanent Construction Representative position because Stanley is black. After extensive discovery, the Air Force moved for summary judgment, contending that Stanley had failed to produce sufficient evidence to set forth a prima facie case of discrimination, or, alternatively, that he had failed to demonstrate that race played any part in Ellis's decision not to promote Stanley.
 
 
 9
 The district court granted summary judgment for the Air Force, concluding that because Stanley was not as qualified as the selected candidates, he could not make out a prima facie case of racial discrimination. Alternatively, the district court ruled that Stanley could not demonstrate that the Air Force's articulated reason for not promoting Stanley was a pretext for discrimination. On appeal, Stanley argues that the district court erred in entering judgment against him because he made a prima facie case of racial discrimination and because material factual disputes over Ellis's intent remain unresolved.
 
 
 10
 Although we agree with Stanley that the district court erred in holding that he had not made a prima facie case, we affirm summary judgment for the Air Force because the record, viewed in the light most favorable to Stanley, contains no reasonable inference that Stanley's race was a determining factor in Ellis's decision to select Fields and Venezia over Stanley.
 
 II.
 
 11
 Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. Sec. 2000e-2(a)(1) (1994). Under a familiar burden-shifting framework of analysis for Title VII actions, once the plaintiff carries his initial burden of proving a prima facie case, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the challenged employment decision. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). By articulating such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and the presumption "drops out of the picture," having "fulfilled its role of forcing the defendant to come forward with some response." St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993). The plaintiff then prevails only by persuading the factfinder that the employer's asserted reason was merely pretextual and that unlawful discrimination had a determinative influence on the employer's decision. See Hazen Paper Co. v. Biggins, 113 S.Ct. 1701, 1706 (1993); St. Mary's Honor Ctr., 113 S.Ct. at 2747.
 
 
 12
 We have adapted this three-step proof scheme to summary judgment rulings. See, e.g., Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir.1993). Although analysis of a Title VII claim calls for shifting burdens of proof and production, the action nevertheless is amenable to summary judgment if the facts of consequence are undisputed. Mitchell, 12 F.3d at 1315. Of course, summary judgment in any action is proper only when the moving party shows that there is no genuine issue of material fact before the court and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). Rather than weighing evidence or making credibility determinations at this stage, the court must draw permissible inferences in the nonmovant's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The party opposing the motion nevertheless must make a sufficient evidentiary showing on each element of his claim to avoid a summary ruling against him. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We review de novo the district court's grant of summary judgment in the Air Force's favor. See Higgins v. E.I. Du Pont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 A.
 
 13
 We turn first to the question of whether Stanley established a prima facie case of racial discrimination. To prove a prima facie case of discriminatory refusal to promote, a plaintiff must show by a preponderance of the evidence that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) the circumstances surrounding the plaintiff's rejection raise an inference of unlawful discrimination. Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir.1995). In a race discrimination action, the plaintiff may satisfy the fourth element by showing that the position was filled by an applicant of another race. See Patterson v. McLean Credit Union, 491 U.S. 164, 186-87 (1989) (holding in Sec. 1981 case that black plaintiff met fourth element by showing position was filled by white applicant) (superseded on other grounds by Sec. 101 of the Civil Rights Act of 1991, 42 U.S.C. Sec. 1981 (1994)); Amirmokri, 60 F.3d at 1130 (holding in Title VII case that plaintiff of foreign origin met fourth element by showing person selected was not of foreign origin).
 
 
 14
 Applying the facts to these elements, we conclude that Stanley has established a prima facie case, and the district court erred in ruling to the contrary. First, Stanley is black. Second, under the Air Force's merit promotion system, Stanley automatically was considered as an applicant for the Construction Representative positions. Third, the parties agree that Stanley was qualified for the positions. Finally, two whites were chosen instead of Stanley.
 
 B.
 
 15
 We now turn to the question of whether Stanley satisfied his ultimate burden of proving that the Air Force's articulated reason for not promoting him was a mere pretext for racial discrimination. Having set forth a prima facie case, Stanley enjoyed a rebuttable presumption that racial discrimination had occurred. The Air Force, however, successfully rebutted that presumption by explaining that Ellis selected Fields and Venezia for the vacancies because they were more qualified than Stanley. See Patterson, 491 U.S. at 187 (employer rebutted presumption by presenting evidence that selected applicant was better qualified than petitioner); Amirmokri, 60 F.3d at 1129 (same). The Air Force's assertion of a legitimate, nondiscriminatory reason for not promoting Stanley elevated the factual inquiry to a new level of specificity. See Burdine, 450 U.S. at 255. The onus then rested upon Stanley to present proof that the Air Force's asserted reason was pretextual and that Stanley's race was a determinative factor in the decision not to promote him. See St. Mary's Honor Ctr., 113 S.Ct. at 2753-54.
 
 
 16
 Stanley fails on both counts. His evidence, assuming it to be true, does not impugn the Air Force's explanation that Stanley was not as qualified as the selected candidates. Stanley claims that he was as qualified as Fields and Venezia in view of the facts that: (1) he received performance evaluations superior to Venezia's; (2) formal education was an irrelevant selection criterion for the Construction Representative position; (3) Ellis failed to consider all of Stanley's qualifications; and (4) LaBrecque, Ellis's supervisor, favored Stanley for one of the positions. We are not persuaded.
 
 
 17
 Although Stanley's performance scores were higher than Venezia's, both Fields and Venezia had significantly more contracting experience and training than Stanley. Whereas Stanley had twelve years of experience in drafting and surveying plus five years of experience performing inspections and quality assurance limited to base housing at Seymour Air Force Base, Fields had more than thirty years of construction experience as a general contractor, draftsman, construction project manager, carpenter, and brick mason for large commercial enterprises. In fact, Fields previously had worked for Ellis as a Construction Representative and had performed well. Venezia, too, had extensive experience monitoring and planning a variety of construction projects off-base and had a technical background as a heating specialist for the Air Force.
 
 
 18
 Further, as for Stanley's insinuation that Ellis took the other candidates' formal education into account only to weed out black candidates, we find no support in the record. Moreover, although Ellis failed to list all of Stanley's qualifications on a worksheet that Ellis used during his deliberations, Ellis had supervised Stanley for three years and stated that he was personally familiar with many of the candidates' qualifications. Finally, Labrecque categorically denied endorsing Stanley for the position. Stanley claims that Labrecque favored him, but the record reflects that Ellis and Labrecque together decided that Fields and Venezia were more qualified than Stanley. Stanley's evidence thus does not indicate that he was as qualified as Fields and Venezia. Neither does Stanley provide any other evidence that his comparatively lesser qualifications were not the true reason for the Air Force's decision not to promote him. See Patterson, 491 U.S. at 187-88.
 
 
 19
 Stanley, however, argues that these and other factors raised an inference that Ellis's racial bias was the true reason for his failure to promote Stanley. According to Stanley, Ellis's allegedly irregular hiring process, his selection of an off-base candidate, his disregard for the CPO's ranking, his preselection of Fields, and his record of not having hired a black applicant for any of the six vacancies that had occurred in the Construction Representative position, raised a genuine and material factual dispute regarding Ellis's intent.
 
 
 20
 Again, we agree with the district court that none of Stanley's evidence suggests racial discrimination. Ellis presented no evidence to refute the affidavits of two CPO employees who declared that Ellis followed normal and accepted hiring procedures. That Ellis failed to interview any of the candidates suggests uniform rather than disparate treatment in the hiring process. Stanley also produced no evidence that Ellis disregarded an alleged Air Force preference for hiring onbase candidates. For purposes of an agreement between the union representing civil servants on the base and the Air Force, Ellis was required to furnish to the CPO a justification for hiring an off-base applicant. Having submitted a proper explanation, Ellis was free to hire Fields.
 
 
 21
 Likewise, we find nothing peculiar in the fact that Ellis disregarded the CPO's ranking of Stanley as number two among on-base candidates, because Ellis never saw the ranking. He received an alphabetical listing of on-base candidates and, as the hiring official, exercised the discretion to rank the candidates according to his view of their merits. Further, although preselection may discredit an employer's proffered explanation, Ellis's preselecting Fields based on their past working relationship does not violate Title VII. See Goostree v. Tennessee, 796 F.2d 854, 861-62 (6th Cir.1986) (holding preselection based on a candidate's superior qualifications does not violate Title VII), cert. denied, 480 U.S. 918 (1987); Kennedy v. Landon, 598 F.2d 337, 341 (4th Cir.1979) (same).
 
 
 22
 Finally, Ellis's record of not hiring a black person as a Construction Representative lacks significance, particularly in view of the fact that it was Ellis who had hired Stanley as an Engineering Technician. Under these circumstances, we may infer that racial discrimination was not a determinative factor in Ellis's decision not to promote Stanley to a Construction Representative position. Cf. Tyndall v. National Educ. Ctrs., Inc., 31 F.3d 209, 214-15 (4th Cir.1994) (inferring that disability was not a determinative factor in decision to terminate plaintiff because the hirer and firer were the same person); Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991) (inferring that age discrimination was not a determinative factor for the same reason). Given the speculative nature of Stanley's allegations, we agree with the district court that Stanley's evidence was insufficient to send the case to the jury.
 
 
 23
 Weighing all of the foregoing evidence in Stanley's favor, a reasonable jury could not conclude either that the Air Force's asserted reason was pretextual or that racial bias was a determinative factor in Ellis's decision not to promote Stanley. To prevail, Stanley had to prove both. See St. Mary's Honor Ctr., 113 S.Ct. at 2747. Finding no genuine factual dispute, the district court properly determined that the Air Force elected not to promote Stanley for a legitimate, nondiscriminatory reason and entered summary judgment in its favor.
 
 III.
 
 24
 The undisputed facts in Stanley's case do not give rise to the inference that his inferior qualifications were not the true reason for the Air Force's failure to promote him, nor do they suggest that Ellis acted with racial bias. Accordingly, we affirm.
 
 
 25
 AFFIRMED.