**Billie Bryan MACKEY, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary, United States Department of Health and Human Services; Earl L. Laurence, Individually; Clifford Moss, Individually; Ralph Bain, Individually; Harold Roth, Individually, Defendants–Appellees.**

No. 99–2582.

United States Court of Appeals,
Fourth Circuit.

March 16, 2004.

Argued: Nov. 2, 2000.

Decided: March 16, 2004.

**ARGUED:** John F. Karl, Jr., Mc-DONALD & KARL, Washington, D.C., for Appellant. Albert David Copperthite, Assistant United States Attorney, Baltimore, Maryland, for Appellees. **ON BRIEF:** Bradley G. McDonald, Jodi T. Tuer, MC-DONALD & KARL, Washington, D.C., for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellees.

Before WIDENER and KING, Circuit Judges, and Margaret B. SEYMOUR, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge WIDENER wrote the opinion in which Judge KING and Judge SEYMOUR concurred.

## OPINION

WIDENER, Circuit Judge:

Billie Bryan Mackey brought suit against the Department of Health and Human Services (HHS) in 1990, and her claims included sex discrimination and retaliation in violation of Title VII. She now appeals the district court's grant of summary judgment against her claim of sex discrimination. Mrs. Mackey also appeals the district court's denial of her motion for summary judgment on her claim of retaliation and its entry of judgment against this retaliation claim after a bench trial. We affirm the judgment in favor of the defendant on the sex discrimination claim. As to the retaliation claim, we decline to re-

view the refusal of summary judgment to the plaintiff, see *Chesapeake Paper Products Co. v. Stone & Webster Engineering Corp.*, 51 F.3d 1229, 1234 (4th Cir.1995), and affirm the judgment after trial in favor of the defendant.

## I.

In 1980, Mrs. Mackey became NIH's Director of the National Digestive Diseases Education and Information Clearinghouse (Clearinghouse), a GS–13 grade position, and she continued in that position until 1984. The Clearinghouse worked to make information generated by research on digestive diseases available to medical practitioners. As director, Mrs. Mackey's duties included chairing meetings of the Clearinghouse advisors, working with outside contractors, and serving as liaison between the Clearinghouse and various digestive disease committees.

On February 15, 1984, Mrs. Mackey received a memorandum from Dr. Harold Roth, Director of the Division of Digestive Services, informing her that Dr. Ralph Bain was to become her immediate supervisor. Later, Mrs. Mackey would learn that Bain would also assume most of her duties as Director.

Bain began his employment with the Clearinghouse working in the office of Dr. Roth under the Intergovernmental Personnel Act, while on leave from the Chemistry Department of the University of Southern Illinois. Bain was appointed a "special expert" at NIH about 1982, and he worked at the Clearinghouse as Executive Secretary of the Digestive Disease Advisory Board. In 1984, Earl Laurence, Executive Director of the National Institute of Arthritis, Diabetes, Digestive, and Kidney Diseases, made a request to convert Dr. Bain's position to that of Health Scientist Administrator, a permanent federal employee position. The position of Health Scientist Administrator as a federal employee was advertised from February 21, 1994 to February 28, 1994, and Bain was selected. It is undisputed that Mrs. Mackey never applied for the position.

The request to convert Bain's position to the Health Scientist Administrator position was ultimately denied by an official in NIH's Department of Personnel Management because the position, as described by Laurence, involved short-term duties, which were considered inappropriate for a permanent civil service placement. Thereafter, Laurence created a different position for Bain, Program Director for Scientific Program Evaluation. A significant portion of the duties of that new position were already being performed by Mrs. Mackey. This position apparently was never advertised, yet paperwork was submitted to NIH's Division of Personnel Management indicating that the position had been advertised and that eight people had been interviewed. Bain was recommended for this second position and was approved. Thereafter, Mrs. Mackey was no longer allowed to serve as liaison between the Clearinghouse and the other digestive disease committees or serve as chairman of meetings of Clearinghouse advisors. Instead, Bain assumed many of Mrs. Mackey's former duties.

Mrs. Mackey responded by timely filing a complaint with HHS's Equal Employment Opportunity (EEO) counselor on June 25, 1984, alleging that Bain's appointment was an act of sex discrimination because, as the report summarized, the action had been taken to the detriment of a woman and for the benefit of a man. Mrs. Mackey also complained that Roth had trouble relating to women in managerial positions and occasionally held informal meetings in the men's room. Additionally, she complained that she was no longer being allowed to perform the duties pre-

scribed by her job description, and that she was more qualified for the new position than was Bain, even though Bain had a doctorate and she had only a master's degree. Finally, the EEO report also mentioned that Dr. Roth had been dissatisfied with a recent Public Health Service evaluation of the Clearinghouse but that Mrs. Mackey didn't believe the evaluation was quite as bad as did Dr. Roth.

On January 7, 1985, Mrs. Mackey filed a second EEO complaint. She again alleged that she was being discriminated against because she was a woman. She cited as discriminatory treatment an incident where she had been forbidden to chair a meeting of Clearinghouse advisors even though that duty was included in her job description. She also cited as evidence of sex discrimination the fact that Bain required her to submit certain of her written work to him for review. Mrs. Mackey also complained that her supervisors were retaliating against her for her previous EEO complaint.

On February 21, 1985, Mrs. Mackey was informed that she was being reassigned to the Division of Extramural Activities (DEA). Thus, Mrs. Mackey's third EEO complaint alleged both that Bain had engaged in sex discrimination against her by requesting a large amount of work be done in a short amount of time, and that her transfer to DEA was in retaliation for her earlier EEO complaints.[1]

In 1989, Mrs. Mackey's discrimination claims were consolidated and heard before an EEOC administrative law judge (ALJ). The ALJ recommended that the agency find Mrs. Mackey had suffered no discrimination, and the EEOC adopted the ALJ's recommendation.

In January of 1990, Mrs. Mackey filed Title VII sex discrimination and retaliation claims against the Department of Health and Human Services (HHS) in the district court of the District of Columbia. Mrs. Mackey also filed a claim against the HHS under the Administrative Procedures Act, filed *Bivens* claims against several of her superiors at the National Institutes of Health (NIH), and filed a claim for punitive damages. In 1991, the D.C. district court transferred the Title VII sex discrimination and retaliation claims to the district of Maryland where proper venue lay and dismissed all of the other claims with prejudice. In April of 1999, the district court for the district of Maryland granted HHS's motion for summary judgment against Mrs. Mackey's sex discrimination claim and denied HHS's motion for summary judgment against Mrs. Mackey's retaliation claim. After a two-day bench trial in September of 1999, the district court entered judgment for HHS on Mrs. Mackey's retaliation claim. Mrs. Mackey appeals the district court's grant of summary judgment in favor of HHS on the sex discrimination claim and the district court's entry of judgment against Mrs. Mackey on her retaliation claim.[2]

---

1. Mrs. Mackey tells us that over a period of several years, she had also filed seven informal complaints of sex discrimination and retaliation in addition to the three formal complaints discussed above.

2. Mrs. Mackey also seeks to appeal error allegedly committed by the district court for the District of Columbia when it dismissed Count III of her complaint, which was Mrs. Mackey's claim for damages under the APA. The district court found that Count III did not

state a claim and dismissed it with prejudice in March of 1991. Mrs. Mackey's motion for rehearing was denied. The dismissal was affirmed by the United States Court of Appeals for the District of Columbia Circuit in January of 1993. Mrs. Mackey's petition for rehearing was denied. There is no authority which would allow us to review the decisions of the United States Court of Appeals for the District of Columbia Circuit or the District Court for the District of Columbia. We there-

## II.

■ Title VII of the Civil Rights Act of 1964, among other things, makes it "an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). Mrs. Mackey essentially complains that at NIH she was accorded disparate treatment forbidden under Title VII. We review de novo the district court's grant of summary judgment against Mrs. Mackey's Title VII sex discrimination claim. *Mikels v. City of Durham,* 183 F.3d 323, 328 (4th Cir.1999).

■ Mrs. Mackey argues that she has established a *prima facie* case of sex discrimination under the framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As summarized in *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954 (4th Cir.1996), under the *McDonnell Douglas* three-step framework,

> the plaintiff-employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.

*Evans,* 80 F.3d at 959.

■ Under *McDonnell Douglas,* in order to establish a *prima facie* case of sex

discrimination, the plaintiff must establish that (1) she is a member of a protected class; (2) her employer had an open position for which she applied; (3) she was qualified for the position; (4) she was rejected for the position under circumstance giving rise to an inference of unlawful discrimination. See *Taylor v. Virginia Union University,* 193 F.3d 219, 230 (4th Cir.1999) (citations omitted).

■ Even if Mrs. Mackey could establish her *prima facie* case, HSS has advanced a nondiscriminatory reason for hiring Bain, arguing that he was better qualified. Bain holds a Ph.D. in chemistry and came to NIH from Illinois State University where he was chairman of the Chemistry Department. Mrs. Mackey holds a master's degree in educational psychology and had been a high school science teacher prior to beginning her employment at NIH.

■ Because HHS offered a legitimate non-discriminatory explanation for hiring Bain, Mrs. Mackey must demonstrate that the reason for hiring Bain advanced by HHS was pretextual. See *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The record in this case, however, essentially is without evidence that HHS's explanation is pretext or that Mrs. Mackey suffered from intentional sex discrimination. In the end, her argument in this case is that her superiors at NIH violated standard hiring procedures by preselecting Bain and placing him into a position that took over many of Mrs. Mackey's duties, and then her superiors falsified records to cover their violations of hiring procedures. Even if Mrs. Mackey's allegations are true, Bain's preselection is not sufficient evidence for jurors reasonably to conclude that HHS's explanation for Bain's hiring

fore do not address further that part of Mrs. Mackey's appeal.

was pretext. See *Kennedy v. Landon,* 598 F.2d 337, 341 (4th Cir.1979)(concluding that even though preselection may have violated the rules and regulations of the state it does not evidence the type of discrimination prohibited by Title VII). In her first formal EEO complaint, Mrs. Mackey alleged that Roth had trouble relating to women in managerial positions and that he occasionally held informal meetings in the men's restroom. These assertions are not supported in the record.

■ Under the *McDonnell Douglas* framework, in order to survive a motion for summary judgment, the plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action. *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. Mrs. Mackey has no such evidence. Thus, we affirm the district court's denial of her sex discrimination claim.

### III.

■ Mrs. Mackey also appeals the denial of her motion for summary judgment on her retaliation claim, and, in addition, the entry of judgment on the merits for the defendant after full trial of the retaliation claim in open court. The order denying her motion for summary judgment is not an appealable order. *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.,* 51 F.3d 1229, 1234 (4th Cir.1995). So we review the entry of judgment in favor of NIH after full trial on the merits of that claim.

■ In order to establish a *prima facie* case of retaliation, Mrs. Mackey must prove three elements: first, that she engaged in protected activity; second, that an adverse employment action was taken against her; and third, that there was a causal link between the protected activity and the adverse employment action. *Laughlin v. Metro. Washington Airports,* 149 F.3d 253, 258 (4th Cir.1998).

■ On appeal from a bench trial, we may set aside findings of fact only if they are clearly erroneous. Fed.R.Civ.P. 52(a). We review the district court's conclusions of law de novo. *Resolution Trust Corp. v. Maplewood Invs.,* 31 F.3d 1276, 1281 n. 7 (4th Cir.1994). In the district court's findings of facts and conclusions of law, delivered from the bench, the court found that it was undisputed that Mrs. Mackey had established the first element of her *prima facie* case of retaliation by engaging in protected activity in the form of her various employment complaints but that she had failed to prove the second and third elements. Thus, the district court found that Mrs. Mackey had not proven that she suffered an adverse employment action when, although the job she had been transferred to may not have been as challenging and satisfying as her previous one, Mrs. Mackey lost no pay or benefits and was even subsequently qualified for promotion to a GS–14.

■ The district court also found that there was no causal connection between Mrs. Mackey's EEO complaints and her transfer. Instead, the district court found credible Laurence's testimony that the reorganization, in which individuals other than Mrs. Mackey were also transferred, was made because the Clearinghouses had budgetary problems and were duplicative and inefficient.[3] As the district court also found, the only evidence that Mrs. Mackey's transfer was causally connected to the EEO complaints she filed was the opinions of Mrs. Mackey herself. A plaintiff's own self-serving opinions, ab-

3. Laurence had previously given a deposition in the case.

sent anything more, are insufficient to establish a *prima facie* case of discrimination. See *Goldberg v. B. Green & Co.,* 836 F.2d 845, 848 (4th Cir.1988).

At this point, it is well to note the reliance of the district court on the testimony of Laurence in open court at the trial of the retaliation claim, the gist of which was that the department was ineffective and had to be reorganized.

> Mr. Laurence was a straightforward gentleman who testified about the decisions that had to be made and he gave clearly the reasons for the reorganization, and I wrote them down. I listened to him. He said basically that the three clearinghouses had budgetary problems. They were duplicative. They were not efficient, not cost effective, and contracts expired at different times. It was cumbersome. It was not smooth in operation. And all of those things caused [him] and Dr. Renault, I believe, and others to reach a decision around 1985 that there had to be a reorganization and a transfer of the clearinghouses to the Public Information Division. Opinion of district court, J.A. 821–822.

* * *

> Mr. Laurence considered what was available at NIH and looked at the various experience that people had and made a decision to, as best he could, find a place that could best utilize the experience and the talent of plaintiff and others and say hopefully that they would get a challenging, enjoyable career. Opinion of district court, J.A. 822.

* * *

> I believe that the defense here has presented a legitimate, neutral, non-dis-

criminatory reason for its action. We may not like it. We may disagree ... but there has been no evidence presented here so far as I am concerned that shows this was any pretext. So I believe they have presented a valid, legitimate, neutral, non-discriminatory reason that has been articulated to support the action, testified by Mr. Laurence, whose testimony I accept and find it credible. Opinion of district court, J.A. 826–827.

So the district court laid off the problems suffered by Mrs. Mackey to the necessary reorganization of her department because of inefficiency, not because of retaliation for filing claims of discrimination because of sex. We agree.

The judgment of the district court is accordingly

*AFFIRMED.*[4]

---

4. The denial of a Rule 30(b)(6) deposition for the plaintiff is not reversible error. The request of the plaintiff to withdraw her motion to strike a part of the NIH brief is granted.